Thank you Mr. Farron. Our last case this morning is VIEGAS v. SHINSEKI. When Congress rewrote 38 U.S.C. 1151 in 1996, the statute wasn't written on a clean slate and it wasn't written in a vacuum. When they added the fault requirement to overturn Gardner, Congress was fully aware of all the kinds of care furnished by VA and it knew full well that 1151A1 and Chapter 17 are intertwined. To be in the unfortunate position like Mr. VIEGAS of having an 1151A1 claim, a veteran must have been getting some sort of medical care, hospital care, medical or surgical treatment, or examination furnished under any law administered by the secretary, by a VA employee, or in a VA facility. This care is furnished pursuant to Chapter 17 titled Hospital, Nursing Home, Domiciliary, and Medical Care. This chapter authorizes VA's entire medical program. Since a veteran filing an 1151A1 claim has received care under Chapter 17, Chapter 17 is the correct place to look for definitions for 1151 purposes, specifically the definition of hospital care. These definitions are broad, Congress knew that, and in fact the Veterans Court has correctly characterized the definition of hospital care as being open-ended. This gives VA flexibility in its medical program. Yet the Veterans Court in its cases has failed to look to Chapter 17 and instead has imposed definitions of its own making when interpreting 1151. These cases define the statute too narrowly and do not give full effect to all the terms of the statute or the intent of Congress. VA has expressed concern about opening the floodgates to claims should a broad definition of hospital care be used. This is not so. Look at Mr. Villegas' claim. He filed his claim anyway. These claims are filed anyway. The veteran doesn't know until the end of the process whether they're entitled. The administrative burden of adjudicating these claims is already there. And perhaps more importantly, the fault requirement. In Mr. Villegas' case, it's very unfortunate, but it's quite clear that he is not at fault, that VA created a condition that was not reasonably foreseeable to him. Most veterans, however, cannot overcome that hurdle of showing the VA was at fault in their case. And recall this is the element that VA asked for when they went and asked Congress to amend the statute in 1996. Your Honors, I have a very short presentation this morning, so in closing we'd ask the Court to interpret 1151 in a way to give effect to all its terms and to reverse the Veterans Court. And if you have no questions at this time, may I reserve my remainder for rebuttal? All right. Thank you, Ms. Blavat. Thank you, Chief Judge. Mr. Austin. Thank you, Your Honors. May it please the Court, this Court should dismiss this case for lack of jurisdiction or alternatively affirm the Veterans Court decision. With respect to the issue of jurisdiction, this Court does not possess jurisdiction to entertain this appeal because Mr. Villegas requests this Court to apply the law to the facts of this case and conclude that the Veterans Court erred in its conclusion that Mr. Villegas' injury was not caused by hospital care within the meaning of Section 1151. You're saying that this Veterans remedy is to sue the government and the District Court for whatever it is, that the injury is clear? Well, that is... Is that the government's position, that this is a different kind of injury? On the merits, that's exactly right, Your Honor. And won't you come at us or come at the District Court and say, I don't believe so, Your Honor. I think that this would be a pure Federal Tort Claims Act case. He slipped and fell in a VA hospital facility. He would then sue the VA, alleging negligence on the part of the VA because the handlebar in the bathroom was not done in a reasonable manner. I think it would be not only a proper lawsuit, but probably a winner. I can't imagine what defense the VA would have under the facts of this case as we know it. And we don't know whether he filed a Federal Tort Claims Act case, but that remedy is clearly available here. And the reason that this case does not come under Section 1151 is because of two major facts, two major circumstances. One is this Court's decision in Jackson and the related 1996 amendments to Section 1151. The critical change to Section 1151 was changing the language results from hospitalization to the language caused by hospital care, medical or surgical treatment, or examination. That was a critical change. This Court in Jackson dispositively determined that there is a clear difference between the term hospitalization and hospital care. Now, the entire premise of Mr. Villegas' case is that the change in the 1996 amendments from hospitalization to hospital care was an editorial adjustment. It wasn't significant. And they say that the only reasonable reading of the statute is that the two terms are synonymous. They are not synonymous. They are a critical difference between the two, as this Court noted in Jackson. What this Court said in Jackson, remember Jackson was a case involving the pre-amendment language hospitalization, and the Court said that hospitalization means that if the accident occurs on the premises of the hospital, it is related to hospitalization. It said that the hospitalization need not be related to the treatment. On the other hand, we have a case here where it comes under the post-amendment language, which is caused by hospital care. Now, they say this is an editorial judgment. The Court in Jackson said completely the opposite. What the Court in Jackson said in determining the definition of hospitalization is it contrasted it with the definition of hospital care. And it said here hospitalization means the status of being in the hospital as opposed to the language specifically citing to the amended language, which of course existed at that time, which was that, quote, the term hospital care implies the provision of care by the hospital specifically as opposed to the broader, more general experience of a patient during the course of hospitalization. Therein lies the difference between Jackson and this case. Now, Mr. Villegas argues that the definition of hospital care and the argument concerning hospital care that we make was merely dictum in Jackson. It wasn't dictum in Jackson. It was the heart of the Jackson case. Although Jackson was a pre-amendment case involving the definition of hospitalization, this Court, in analyzing that term, specifically used the term hospital care and the specific language in the amendment to contrast it with the term hospitalization so that the Court's analysis in Jackson concerning what hospital care meant was integral to its decision and therefore is not dictum. Another critical part of this case is the fact that the Veterans Court relied upon the standard for causation that was used by the Veterans Court in the Loving case, which was derived from this Court's decision in Grant. And the Veterans Court said that the injury or death must be, quote, part of the natural sequence of cause and effect flowing directly from the actual provision of hospital care, medical care, medical or surgical treatment or examination. The Veterans Court made a factual finding that this injury was so remote from actual rendering of hospital care or the rendering of medical treatment that it could not be considered within the scope of 1151. And that is why this... You're saying it's not part of the natural sequence that one would expect to be reasonably or narrowly safe in the restroom? No, I'm not saying that, Your Honor. What we're saying is it doesn't flow, according to the Grant test, from the natural sequence of cause and effect stemming from the rendering of the hospital care or the medical treatment. I think the two are basically synonymous. The medical treatment or the hospital care here, and it's certainly unclear whether this is a hospital or not, but putting that question aside, the treatment here was the aquatic therapy. Now, if this had been a completely different case where Mr. Villegas went in for his aquatic therapy treatment and during the treatment an injury occurred, his knee collapsed or his back collapsed, he was a severely injured veteran and he got worse because of that, that would be within the scope of Section 1151. But this injury could have occurred to absolutely any visitor going to the Veterans Center. It was after the treatment, it was going to the bathroom, any bathroom that you might find in any public facility which has a handicapped area with a bar and occurred there. It was related to the hospitalization. So you want him to pee in the pool? Oh, absolutely not, Your Honor. Absolutely not. But it wasn't related to his treatment. It's too remote from it. And again, if you want to make an argument that going to the bathroom, again this was after a separate part of the building when he was on his way to his scooter, that is a factual determination made by the board applying the standard from Grant to the actual facts of this case. And that's why this court doesn't have jurisdiction. We also rely upon the legislative history, specifically the amendments which were, and counsel was correct, the amendments were essentially because of Brown v. Gardner. And in Brown v. Gardner, the Supreme Court, agreeing with this court, concluded that you didn't have to show negligence by the VA with respect to the treatment and because that term was missing from the statute. The statute was corrected to put that negligence requirement in there. But at the same time that change was made, the results from hospitalization language was changed to caused by hospital care, which this court again in Jackson recognized was critical. It was a critical change. And the overall, it's also important to look at the overall focus of the amendments, which was not a liberalizing provision at all, but to restrict the scope of the statute. One method, of course, and the most obvious was putting the negligence requirement in, but the other one was changing the language from hospitalization to hospital care. Just to be clear where this veteran stands, does the government concede, does the secretary agree that there is then, if there's a cause of action, it's in perhaps the state court or the district court for whatever then the veteran can prove in terms of whatever it might be, I don't know, negligence or something else? Absolutely, Your Honor. As I said, this is a Federal Tort Claims Act case, and he certainly is entitled to go into the district court and file a Federal Tort Claims Act action. Now, I must say, that hasn't been said. I don't know whether he has filed one. He may have a time problem with that. But that's where his remedy lies here, because it's not related to the hospital care or treatment. We also contend that the VA has interpreted its regulations in a manner consistent with the Veterans Court decision. And our primary reliance upon that, if you look at the regulations, we believe that 38 CFR Section 3.361C is consistent with that interpretation. And then it says, has to be caused by hospital care or medical treatment. And simply because you had treatment and later have an increase in your disability, So how does one decide whether there's negligent treatment or negligent equipment? Is there a line to be drawn, or are we just providing a basis for saying, whatever it is, you're in the wrong court? To be within the scope of Section 1151, it has to be related to the care and treatment that was rendered. Directly related to that. And use of the restroom in a hospital is not something where one would expect or ordinary safety? Well, ordinary safety, expecting ordinary safety is a negligence concept, which, in fact, the Veterans Court has addressed and distinguished from Section 1151. I said ordinary safety. I didn't say negligence. You expect to be safe, and it turns out you're unsafe. I think any bathroom anywhere in the United States that has a bar for the handicapped, and that bar is insufficient, it is entitled to be sued for it, and an injury results from it. The problem here is not that the VA's safety precautions were correct in terms of that bathroom, it's that it wasn't related to the care and treatment. And the VA has interpreted it precisely this way. So any Veteran who goes to a VA hospital runs the risk of being in an unsafe environment with no remedy? I think that's true. No, they always have a remedy in the Federal Court Claims Act. That's where you sue the government for negligence. But Section 1151 is specifically for negligence related to care and treatment, and that is the problem here. It's not related to his care and treatment. It's just as if a visitor went in there. It's not any different. It's a public restroom that anybody could have gone to. It's not related to the care and treatment that he was rendered. I would point the Court to 69 FR 46426-01, which I think is very important in illustrating why the VA has construed this statute in precisely the manner that the Veterans Court did here. And the commenter suggested there that VA should have a specific provision in Section 3.361F, which defines what parts are not hospital care, and that specific provision should say that if it's negligence by a janitor, or negligence by a policeman, or by an administrator, that that should be specifically excluded from the definition of hospital care. And what VA said is, we're not going to put that provision into our regulation. And the reason we're not going to do that is because the statute says that it has to be caused by medical care, and these individuals are not health care providers, and generally speaking, do not render health care. Therefore, there's no need to put this exclusion in the regulation, because it's obvious from the intent of the statute that it's not included. And we don't think that we should put something in that relates to specific professions, but rather we should look at the circumstance of the case to see whether it's related to health care. What does that have to do with unsafe equipment? Because it shows that the unsafe equipment that's not related to health care, or not related to hospital care or medical treatment, was not intended to be within the scope of Section 1151. Your Honor, there could be equipment failures that are, in fact, related to health care. Let me give you this example. Suppose you're in the hospital. That was my question before. Where do you draw the line? How does the veteran know? If the government is liable, on your theory, no matter what, then it seems very strange to say, not in this court, not in this hospital. Go someplace else and try your luck. Well, it's a question of whether it should be a claim under the veteran's statutes or should be a claim in tort. But let me give your Honor an example of the type of situation I think that would come, equipment situation that would come. Let's say you're in a hospital bed, and a patient normally has railings on the side to make sure that the patient, particularly in a mental hospital, doesn't fall out of the bed. Let's say that railing fails, and nothing due to the health care providers, nothing due to anything the nurses or doctors did, but the rail falls down. As a result, the patient falls out of bed and is injured. That would be an accident, in my opinion. And it would be within Section 1151 because it's provided. How about the little bathroom right next to his room? When he gets out of the bed and goes in there and pulls the railing out of the thing and falls down? What about that? Your Honor, I think that's a much closer call than this case. I think that's a very close call. But I think it's another reason I stress jurisdiction, because I think under that fact circumstance, you would have to have the board or the R.O. apply the grand standard, the correct legal standard, and say, does this flow directly from it? But I would certainly agree with you, Your Honor, that that is much closer to being related to care than this case, which is simply elsewhere in the hospital that anyone coming in there would go in, and no different from any bathroom anywhere else in the United States that makes appropriate provisions for the handicapped. And unless the court has anything further, any further questions, we would ask that the court case be dismissed from active jurisdiction or, in the alternative, that the Veterans Court decision be affirmed. Thank you. Thank you, Mr. Austin. Ms. Blawett. Thank you, Your Honors. I think Judge Newman has encapsulated this very nicely. How does the Veteran know? It's very nice that the Federal Tort Claims Act is available under certain circumstances. Mr. Villegas, as far as I am aware, he has not filed a Federal Tort Claims Act claim. His injury was back in 2004. I suspect he's well beyond the statute of limitations at this point. He is, however, a disabled Veteran who relies entirely on VA for his care. So where is he likely to go? And also I would like to point out that what 1151 provides is different from what the Tort Claims Act provides. They are not equivalent. The Tort Claims Act is going to provide money. That's very nice. Money is good. But 1151 is going to provide benefits to the Veteran as if service-connected. So he would be entitled to lifelong benefits. Absolutely, Your Honor, absolutely. And in his particular case, because of the severity of his disabilities, he would probably be entitled to adaptive equipment, a house, a car, things of this nature that are provided to service-connected Veterans with disabilities of this type. I know there was a lot of time talking about Jackson. I think the Court is well aware what Jackson considered at the time. It wasn't the old version of the statute. I think the comparison against the new statute was really sort of a passing reference or maybe a convenience. It certainly wasn't presented in this way to the Court at that time. In fact, the critical difference, to use the term that my opposing counsel kept using, I might have made an error in my brief by saying editorial adjustment because as I review these definitions and Chapter 17 as a whole and the broadness and the flexibility VA has in the provision of medical care, I think hospital care may well be a broader term than hospitalization. Hospitalization, as it was used in the 30s in the original statute, VA only had about 50 some odd hospitals at that time when that statute was passed. Now VA has literally over 1,000 facilities that are managed by the Veterans Health Administration, more than 150 hospitals, one of which is at the Palo Alto Medical Center that Mr. Villegas was at. So I think it's a very different world, and the VA provides a much greater variety of care in a greater variety of settings, and I think it is actually a broader term than hospitalization was. My opposing counsel mentioned loving. I don't know why the lower court sought the cause definition that they did in loving. I do recognize it came from this court, but in a completely different setting from the Vaccine Act. I think the answer there is that we look to the language of 1151. We don't need to look outside 1151. We need to interpret 1151 consistent with the statutes that surround it, intended to benefit veterans injured by VA. In essence, that's what we ask for, that this court interpret the statute in the way Congress intended and give meaning to all its terms. Thank you very much, Ms. Pollack. That concludes our morning. All rise. We are adjourned until tomorrow morning at 10 a.m.